## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SARA CARTER, ET.AL., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| v. | ) | 1:20-CV-01517-SCJ |
| | ) | |
| | ) | |
| BRIAN KEMP, ET.AL., | ) | |
| | ) | |
| Defendants. | ) | |

## **PLAINTIFF'S NOTICE OF FILING**

Please take notice that Plaintiffs are filing the attached documents listed below:

- Declaration of Public Health Emergency

- Declaration of Judicial Emergency

- Information Sheet

- Extension of Public Health Emergency and of Judicial Emergency ("Extensions of Emergencies")

- Letter to Kemp

- Letter to Melton

–1–

- Letter from Melton

/s/ John R. Monroe
John R. Monroe
John Monroe Law, P.C.
Attorney for Plaintiff
156 Robert Jones Road
Dawsonville, GA  30534
678-362-7650
jrm@johnmonroelaw.com
State Bar No. 516193



# THE STATE OF GEORGIA

### EXECUTIVE ORDER

---

BY THE GOVERNOR:

#### DECLARATION OF PUBLIC HEALTH STATE OF EMERGENCY

**WHEREAS:**   In late 2019, a new and significant outbreak of respiratory disease caused by a novel coronavirus emerged in Wuhan, China; and

**WHEREAS:**   The respiratory disease caused by the novel coronavirus, known as "COVID-19," is an infectious virus that can spread from person-to-person and can result in serious illness or death; and

**WHEREAS:**   On March 13, 2020, President Donald Trump declared the outbreak of COVID-19 a national emergency; and

**WHEREAS:**   The Centers for Disease Control and Prevention has identified the potential public health threat posed by COVID-19 both globally and in the United States, and has advised that the person-to-person spread of COVID-19 will continue to occur globally, including within the United States; and

**WHEREAS:**   The Centers for Disease Control and Prevention has noted that COVID-19 is proliferating via "community spread," meaning people have contracted the virus in areas of Georgia as a result of direct or indirect contact with infected persons, including some who are not sure how or where they became infected; and

**WHEREAS:**   Laboratory testing has confirmed more than sixty cases of COVID-19 in Georgia; and

**WHEREAS:**   In consultation with the Commissioner of Public Health, the Georgia Coronavirus Task Force, and other state health and emergency preparedness officials, I have determined a public health emergency exists, and that it is necessary and appropriate to take action to protect the health, safety, and welfare of Georgia's residents and visitors to ensure COVID-19 remains controlled throughout this State, as provided by Code Section 38-3-51; and

**WHEREAS:**   The uninterrupted supply of medical goods and other emergency related materials, supplies, goods, and services during this

emergency is an essential need of the public and any perceived or actual shortage threatens public welfare; and

**WHEREAS:**   The Federal Motor Carrier Safety Regulations, 49 C.F.R. §§ 390 *et seq.*, prescribes limits on the hours of service for operators of commercial vehicles, and federal law, 23 U.S.C. § 127, sets forth certain weight limitations for vehicles on interstate highways; and

**WHEREAS:**   49 C.F.R. § 390.23 allows the Governor of a state to suspend these rules and regulations for commercial vehicles responding to an emergency for up to thirty (30) days, if the Governor determines an emergency condition exists.

**NOW, THEREFORE, PURSUANT TO CODE SECTION 38-3-51, AND THE AUTHORITY VESTED IN ME AS GOVERNOR OF THE STATE OF GEORGIA, IT IS HEREBY**

**ORDERED:**   That a Public Health State of Emergency exists in the State of Georgia due to the public health emergency from the spread of COVID-19.

**IT IS FURTHER**

**ORDERED:**   That all resources of the State of Georgia shall be made available to assist in activities designed to address this emergency, control the spread of COVID-19, and aid recovery efforts.

**IT IS FURTHER**

**ORDERED:**   That the Georgia Emergency Management and Homeland Security Agency shall activate the Georgia Emergency Operations Plan (GEOP) in response to this emergency.

**IT IS FURTHER**

**ORDERED:**   That the Georgia Department of Public Health, as the state agency responsible for emergency management services under *GEOP Emergency Support Function (ESF) 8 - Public Health and Medical Services*, shall coordinate with the Center for Disease Control and Prevention for release of the Strategic National Stockpile as necessary and appropriate in response to this Public Health State of Emergency.

**IT IS FURTHER**

**ORDERED:**   That the Georgia Emergency Management and Homeland Security Agency is designated as the lead agency for responding to this public health emergency and shall coordinate all emergency response activities and other matters pertaining to this Public Health State of Emergency.

IT IS FURTHER

ORDERED:    That acting pursuant to the Governor's authorization, the Georgia Department of Public Health shall coordinate with the Georgia Emergency Management and Homeland Security Agency to take any action necessary to protect the public's health, including, without limitation:

(1) Planning and executing public health emergency assessments, mitigation, preparedness response, and recovery for the state;

(2) Coordinating public health emergency responses between state and local authorities;

(3) Establishing protocols to control the spread of COVID-19;

(4) Coordinating recovery operations and mitigation initiatives;

(5) Collaborating with appropriate federal government authorities, elected officials of other states, private organizations, or private sector companies;

(6) Organizing public information activities regarding the state's public health emergency response operations, including educating the public on prevention of the spread of COVID-19 based on Centers for Disease Control and Prevention's guidelines and the best scientific evidence available;

(7) Providing special identification for public health personnel involved in this Public Health State of Emergency;

(8) For all persons meeting the Centers for Disease Control and Prevention's definition of a Person Under Investigation ("PUI"), implementing a program of active monitoring, which may include a risk assessment within twenty-four (24) hours of learning that the person meets the PUI criteria and twice-daily temperature checks for a period of at least fourteen (14) days or until the PUI tests negative for COVID-19; and

(9) Implementing quarantine, isolation, and other necessary public health interventions consistent with Code Sections 31-12-4 and 38-3-51(i)(2) or as otherwise authorized by law.

IT IS FURTHER

ORDERED:    That all state and local authorities as well as public and private hospitals, healthcare facilities, clinics, and medical personnel shall fully comply with orders by the Governor as authorized by Georgia law, in furtherance of this Order.

IT IS FURTHER

ORDERED:    The Georgia Composite Medical Board is authorized to grant temporary licenses to physicians who apply for a temporary medical license and are currently licensed as a physician in good standing by equivalent boards in other states to assist with the needs of this public health emergency.

**IT IS FURTHER**

**ORDERED:**    The Georgia Board of Nursing is authorized to grant temporary licenses to nurses who apply for a temporary license and are currently licensed in good standing as an Advanced Practice Registered Nurse, Licensed Practical Nurse, or Registered Professional Nurse by an equivalent board in another state to assist with the needs of this public health emergency.

**IT IS FURTHER**

**ORDERED:**    That in accordance with 49 C.F.R. 390.23(a)(1)(i)(A), the federal rules and regulations limiting hours operators of commercial vehicles may drive are suspended to ensure that carrier crews are available as needed to provide emergency relief. This declared emergency justifies a suspension of Part 395 (driver's hours of service) of Title 49 of the Code of Federal Regulations. The suspension will remain in effect for thirty (30) days from the date of this Order or until the emergency condition ceases to exist, whichever is less.

**IT IS FURTHER**

**ORDERED:**    That no motor carrier operating under the terms of this emergency declaration will require or allow an ill or fatigued driver to operate a motor vehicle. A driver who notifies a motor vehicle carrier that he or she needs immediate rest will be given at least ten (10) consecutive hours off-duty before being required to return to service.

**IT IS FURTHER**

**ORDERED:**    That weight, height, and length for any such vehicle traveling through the State of Georgia for the purposes of providing disaster relief and/or preparation, which traverses roadways maintained by the State of Georgia, shall not exceed the following:

(1) A maximum gross vehicle weight for vehicles equipped with five (5) weight bearing axles, with an outer bridge span of not less than fifty-one (51) feet, shall not exceed a gross vehicle weight of ninety-five (95) thousand pounds, a maximum width of ten (10) feet and an overall length of one hundred (100) feet. Continuous travel is authorized, with the proper escorts.

(2) If the width of said vehicle exceeds eight (8) feet six (6) inches ad is traveling after daylight, defined as thirty (30) minutes before sunset to thirty (30) minutes after sunrise, the transporter is required to have a vehicle front and a rear escort/amber light when traveling on a two lane roadway and a vehicle rear escort when traveling on a four lane highway.

Transporters are responsible for ensuring they have proper oversize signs, markings, flags, and escorts as defined in the Georgia Department of Transportation Rules and Regulations.

**IT IS FURTHER**

**ORDERED:** That commercial vehicles operating outside the normal weight, height, and length restrictions under the authority of this Executive Order shall be issued permits by the Georgia Department of Public Safety. Said vehicles shall be subject to any special conditions the Georgia Department of Public Safety may list on applicable permits. Nothing in this Executive Order shall be construed to allow any vehicle to exceed weight limits posted for bridges and like structures, nor shall anything in this Executive Order be construed to relieve compliance with restrictions other than those specified in this Executive Order or from any statute, rule, order or other legal requirement not specifically waived herein. Oversize permits may be issued by the Georgia Department of Public Safety, Motor Carrier Compliance Division, during normal business hours, Monday through Friday by calling 404-624-7700 or through the Georgia Permitting and Routing Optimization System online portal at https://gapros.dot.ga.gov/.

**IT IS FURTHER**

**ORDERED:** That during preparation, response, and recovery activities for this Public Health Emergency, price gouging of goods and services necessary to support Public Health would be detrimental to the social and economic welfare of the citizens of this State, and thus Code Section 10-1-393.4, prohibiting price gouging, remains in effect.

**IT IS FURTHER**

**ORDERED:** That pursuant to Code Section 38-3-51(a), the General Assembly shall convene for a special session, beginning on March 16, 2020, at 8:00 A.M. for the purpose of concurring with or terminating this Public Health State of Emergency.

**IT IS FURTHER**

**ORDERED:** That the State of Emergency shall terminate on April 13, 2020, at 11:59 P.M., unless it is renewed by the Governor.

This 14th day of March 2020, at _10:15_ A.M.



GOVERNOR



SUPREME COURT OF GEORGIA

**FILED**
Administrative Minutes
MAR 1 4 2020
Thérèse S. Barnes,
Clerk/Court Executive
SUPREME COURT OF GEORGIA

March 14, 2020
**(Amended)**

### ORDER DECLARING STATEWIDE JUDICIAL EMERGENCY

WHEREAS, the Governor has determined that a Public Health State of Emergency exists in the State of Georgia due to the spread of the Coronavirus/COVID-19, and whereas that state of emergency constitutes a "judicial emergency" pursuant to OCGA § 38-3-60 et seq., see OCGA § 38-3-60 (2).

Now therefore, pursuant to OCGA § 38-3-61, the Honorable Harold D. Melton, Chief Justice of the Supreme Court of Georgia, DOES HEREBY ORDER AND DECLARE a Statewide Judicial Emergency in the State of Georgia. The nature of this emergency is the continued transmission of Coronavirus/COVID-19 throughout the State and the potential infection of those who work in or are required to appear in our courts.

Thus, in order to protect the health, safety, and liberty of all citizens in this State, the undersigned hereby declares a Statewide Judicial Emergency affecting all courts and clerk's offices in the State as it relates to all judicial proceedings.

To the extent feasible, courts should remain open to address essential functions, and in particular courts should give priority to matters necessary to protect health, safety, and liberty of individuals. Essential functions are subject to interpretation; however, some matters that fall into the essential function category are: (1) where an immediate liberty or safety concern is present requiring the attention of the court as soon as the court is available; (2) criminal court search warrants, arrest warrants, initial appearances, and bond reviews; (3) domestic abuse temporary protective orders and restraining orders; (4) juvenile court delinquency detention hearings and emergency removal matters; and (5) mental health commitment hearings.

In addition, trials in any criminal case for which a jury has been empaneled and the trial has commenced as of the date of this order shall continue to conclusion, unless good cause exists to suspend the trial or declare a mistrial.  The decision whether to suspend a criminal trial or declare a mistrial rests with the judge presiding over the case.

To the extent court proceedings are held, they should be done in a manner to limit the risk of exposure, such as by videoconferencing, where possible.

Pursuant to OCGA § 38-3-62, during the period of this Order, the undersigned hereby suspends, tolls, extends, and otherwise grants relief from any deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters, including, but not limited to any: (1) statute of limitation; (2) time within which to issue a warrant; (3) time within which to try a case for which a demand for speedy trial has been filed; (4) time within which to hold a commitment hearing; (5) deadline or other schedule regarding the detention of a juvenile; (6) time within which to return a bill of indictment or an accusation or to bring a matter before a grand jury; (7) time within which to file a writ of habeas corpus; (8) time within which discovery or any aspect thereof is to be completed; (9) time within which to serve a party; (10) time within which to appeal or to seek the right to appeal any order, ruling, or other determination; and (11) such other legal proceedings as determined to be necessary by the authorized judicial official.

**This Statewide Judicial Emergency shall terminate on April 13, 2020, at 11:59 p.m., unless otherwise extended.**

Should the state of emergency extend beyond the period indicated above or should the nature of the emergency otherwise require modification, a determination of available alternative remedies for the conduct of court business will be made as necessary, and a corresponding order will be entered and distributed in accordance with Georgia law.

IT IS FURTHER ORDERED, pursuant to OCGA § 38-3-63, that notice and service of a copy of this Order shall immediately be sent to the judges and clerks of all courts in this State and to the clerk of the Georgia Court of Appeals, such service to be accomplished through means to assure expeditious receipt, which include electronic means; and

IT IS FURTHER ORDERED that notice shall also be sent to the media, the State Bar of Georgia, and the officials and entities listed below and shall constitute sufficient notice of the issuance of this Order to the affected parties, counsel for the affected parties, and the public.

IT IS SO ORDERED this 14th day of March, 2020.

Chief Justice Harold D. Melton
Supreme Court of Georgia

cc:
Governor Brian P. Kemp
Lt. Governor Geoff Duncan
Speaker David Ralston
State Bar of Georgia
Administrative Office of the Courts
Judicial Council of Georgia
Council of Superior Court Clerks of Georgia
Department of Juvenile Justice
Criminal Justice Coordinating Council
Council of Accountability Court Judges
Georgia Commission on Dispute Resolution
Institute of Continuing Judicial Education of Georgia
Georgia Council of Court Administrators
Chief Justice's Commission on Professionalism
Judicial Qualifications Commission
Association County Commissioners of Georgia
Georgia Municipal Association
Georgia Sheriffs' Association
Georgia Association of Chiefs of Police
Georgia Public Defender Council

Prosecuting Attorneys' Council of Georgia
Department of Corrections
Department of Community Supervision
Georgia Court Reporters Association
Board of Court Reporting
State Board of Pardons and Paroles

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____ , Clerk

4

# Weapons Carry License Information Sheet

# Regarding Chief Justice Melton's Statewide Judicial Emergency Order dated March 14, 2020

Probate Courts across the state of Georgia will temporarily suspend acceptance of applications for Weapons Carry Licenses and Renewal Weapons Carry Licenses pursuant to an Order of the Supreme Court of Georgia declaring a Judicial Emergency. That Order may be found at https://www.gasupreme.us/wp-content/uploads/2020/03/CJ-Melton-amended-Statewide-Jud-Emergency-order.pdf

If you are due to renew during the Emergency period, your license will not expire. Chief Justice Melton's Order essentially pushes "PAUSE" on all deadlines created by law or rule. Therefore, you will still be able to renew after the Emergency ends. Presently, that date is April 14, 2020. If that date is extended, further order will issue.

To give you a concrete example of how this will work, simply add 30 days to whatever your expiration or renewal deadline is. A license expiring March 18, 2020, will expire April 17, 2020. The renewal deadline will extend to May 17, 2020.

We thank you for your patience in this unusual time. If you have further questions, please call the court and we will be glad to help you.


_____County Probate Court

Judge _____

Phone number



# THE STATE OF GEORGIA

## EXECUTIVE ORDER

---

BY THE GOVERNOR:

### RENEWAL OF PUBLIC HEALTH STATE OF EMERGENCY

**WHEREAS:**    On March 14, 2020, due to the impact of COVID-19 on the State of Georgia, I issued Executive Order No. 03.14.20.01, declaring a Public Health State of Emergency in Georgia; and

**WHEREAS:**    The Georgia General Assembly concurred with Executive Order 03.14.20.01 by joint resolution on March 16, 2020; and

**WHEREAS:**    Code Section 38-3-51 vests the Governor with the power to renew any State of Emergency for a period not to exceed thirty (30) days; and

**WHEREAS:**    In consultation with the Commissioner of Public Health, the Director of the Georgia Emergency Management and Homeland Security Agency, the Adjutant General of the Georgia National Guard, and other state health and emergency preparedness officials, I have determined the public health emergency created by the spread of COVID-19 persists in the State, and that it is necessary and appropriate to renew the Public Health State of Emergency for thirty (30) days.

**NOW, THEREFORE, PURSUANT TO CODE SECTION 38-3-51, AND THE AUTHORITY VESTED IN ME AS GOVERNOR OF THE STATE OF GEORGIA, IT IS HEREBY**

**ORDERED:**    That the Public Health State of Emergency declared by Executive Order 03.14.20.01, which is set to expire on Monday, April 13, 2020 at 11:59 P.M., shall be renewed for thirty (30) days.

**IT IS FURTHER**

**ORDERED:**    That the Public Health State of Emergency shall terminate on May 13, 2020, at 11:59 P.M., unless it is renewed by the Governor.

**IT IS FURTHER**

**ORDERED**:    That the terms of Executive Order 03.14.20.01 are hereby adopted by reference.

**IT IS FURTHER**

**ORDERED**:    That Executive Orders 04.02.20.01, 04.03.20.01, and 04.03.20.02 which are set to expire on Monday, April 13, 2020, at 11:59 P.M. are hereby extended for a period of seventeen (17) days, and shall expire on Thursday, April 30, 2020, at 11:59 P.M.

**IT IS FURTHER**

**ORDERED**:    That if one or more of the provisions contained in this Order shall be held to be invalid, in violation of the Georgia Constitution, in violation of Georgia law, or unenforceable in any respect, such invalidity, violation, or unenforceability shall not affect any other provisions of this Order, but, in such case, this Order shall be construed as if such invalid, illegal, or unenforceable provision had not been included in the Order.

**IT IS FURTHER**

**ORDERED**:    All provisions of this Order shall become effective upon signature.

This 8th day of April 2020, at **2:41 P.M.**

_____
**GOVERNOR**





FILED
Administrative Minutes

APR 06 2020
Therese S. Barnes,
Clerk/Court Executive
SUPREME COURT OF GEORGIA

SUPREME COURT OF GEORGIA

April 6, 2020

## ORDER EXTENDING DECLARATION OF STATEWIDE JUDICIAL EMERGENCY

Pursuant to OCGA § 38-3-61, and due to the continuing statewide emergency involving the transmission of Coronavirus/COVID-19, the Honorable Harold D. Melton, Chief Justice of the Supreme Court of Georgia, does hereby extend the March 14, 2020 (amended) Order Declaring Statewide Judicial Emergency, which would have expired on April 13, 2020 at 11:59 p.m., until Wednesday, May 13, 2020, at 11:59 p.m., unless otherwise further modified or extended. The Chief Justice will provide notice as to the expected termination of the Order at least one week in advance to allow courts to plan the transition to fuller operations.

With regard to matters not deemed essential functions under the Statewide Judicial Emergency Order, courts and litigants are encouraged to proceed to the extent feasible and consistent with public health guidance, for example through the use of teleconferences and videoconferences, to reduce backlogs when the judicial emergency ends.

With regard to all matters in this challenging time, all lawyers are reminded of their obligations of professionalism.

It is ordered, pursuant to OCGA § 38-3-63, that notice and service of a copy of this Order shall immediately be sent to the judges and clerks of all courts in this State and to the clerk of the Georgia Court of Appeals, such service to be accomplished through means to assure expeditious receipt, which include electronic means; and

It is further ordered that notice shall also be sent to the media, the State Bar of Georgia, and the officials and entities listed below and shall constitute sufficient notice of the issuance of this Order to the affected parties, counsel for the affected parties, and the public.

IT IS SO ORDERED this 6th day of April, 2020.

_____
Chief Justice Harold D. Melton
Supreme Court of Georgia

cc:
Governor Brian P. Kemp
Lt. Governor Geoff Duncan
Speaker David Ralston
State Bar of Georgia
Administrative Office of the Courts
Judicial Council of Georgia
Council of Superior Court Clerks of Georgia
Department of Juvenile Justice
Criminal Justice Coordinating Council
Council of Accountability Court Judges
Georgia Commission on Dispute Resolution
Institute of Continuing Judicial Education of Georgia
Georgia Council of Court Administrators
Chief Justice's Commission on Professionalism
Judicial Qualifications Commission
Association County Commissioners of Georgia
Georgia Municipal Association
Georgia Sheriffs' Association
Georgia Association of Chiefs of Police
Georgia Public Defender Council
Prosecuting Attorneys' Council of Georgia
Department of Corrections
Department of Community Supervision
Georgia Court Reporters Association
Board of Court Reporting
State Board of Pardons and Paroles
Constitutional Officers Association of Georgia
Council of Magistrate Court Clerks
Council of Municipal Court Clerks

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the
minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto
affixed the day and year last above written.

_____, Clerk

# JOHN R. MONROE
# JOHN MONROE LAW, P.C.

**March 19, 2020**

The Hon. Brian Kemp
Governor

**RE:      Request of GeorgiaCarry.Org, Inc. to Suspend Enforcement of O.C.G.A. § 16-11-126 During COVID-19 Emergency**

Dear Gov. Kemp:

I am writing you behalf of GeorgiaCarry.Org, Inc.  As you know, Chief Justice Melton has declared a Statewide Judicial Emergency and has ordered judges not to perform "non-essential" functions.  The Council of Probate Judges has determined that issuing Georgia weapons carry licenses ("GWLs") is "non-essential."  For the duration of the Judicial Emergency, the State is not issuing GWLs or even accepting applications for them.

O.C.G.A. § 16-11-126 prohibits carrying a weapon outside one's home, automobile, or place of business without a GWL.  Violations are punishable as for a misdemeanor ($1,000 fine and 12 months in jail).

The only way our licensing requirement "works" constitutionally is with the relative ease for law-abiding citizens to  obtain a GWL.  We have moved from the status quo ante of relative ease to the current state of sheer impossibility of obtaining a GWL.

In order to preserve the Second Amendment and State Constitutional rights of law-abiding citizens during the emergency, I therefore request that you use your emergency powers to suspend enforcement of O.C.G.A. § 16-11-126 for the duration of the emergency.  This request is not a drastic one.  Dangerous people such as convicted felons and mentally ill will remain prohibited under state and federal law (O.C.G.A. § 16-11-131; 18 U.S.C. § 922(g)) from even possessing firearms, let alone carrying them.  The request would only allow people who already are permitted to possess firearms to carry them outside their homes, automobiles, and places of business in order to protect themselves and their families during this time of crisis.

Thank you in advance for your consideration and your leadership during this emergency, and please contact me if you have any questions.

Sincerely,


John R. Monroe
Vice President, GeorgiaCarry.Org, Inc.

**156 Robert Jones Road      Dawsonville, Georgia 30534**
**678 362 7650**                                                        **jrm@johnmonroelaw.com**

# John R. Monroe
# John Monroe Law, P.C.

**March 27, 2020**

The Hon. Harold D. Melton, Chief Justice
Supreme Court of Georgia
330 Capitol Avenue, SE
Atlanta, GA  30334

**RE:       Constitutional Implication of Judicial Emergency**

Dear Chief Justice Melton:

I hope my letter finds you well during these difficult times.

I am writing you regarding a constitutional issue that has arisen as an indirect result of your declaration of a judicial emergency.  As you know, Georgia law prohibits carrying a weapon outside one's home, automobile, or place of business without a license.  O.C.G.A. § 16-11-126.  Handguns are defined to be weapons.  O.C.G.A. § 16-11-125.1.  The Supreme Court of the United States ruled in *District of Columbia v. Heller* that the Second Amendment protects a fundamental, individual right to keep and carry arms in case of confrontation, and that the handgun is the quintessential arm for self-defense in America.  Your Court ruled in *Nunn v. State* that any provision of law banning the carrying of handguns openly is unconstitutional and void.  I submit that the licensing requirement in Georgia normally only comports with our Constitutions because of the (prior to the emergency) relative ease and low cost of obtaining a license.

The Council of Probate Judges has determined, pursuant to your declaration, that the issuance of weapons carry licenses pursuant to O.C.G.A. § 16-11-129 is a non-essential function.  As a result, the probate judges around the state are neither accepting nor processing applications for licenses.  The probate judges have determined that your declaration automatically extends the expiration dates of licenses, so renewals of licenses is not an immediate issue.

On the other hand, a Georgian wishing to obtain a new license is unable to do so.  He is faced with a statute requiring a license to carry a handgun in public and a sheer impossibility of even applying for a license, let alone obtaining one.  Even though he has state and federal constitutional rights to carry a handgun in case of confrontation, Georgia has essentially banned him from doing so.  The de facto ban appears to conflict with the Second Amendment and Georgia's constitutional analog (Art. I, Sec. I, Par. VIII).

I have considered a variety of possible solutions to the problem, and I keep returning to what appears to be the simplest, easiest, and most straightforward:  suspend enforcement of O.C.G.A. § 16-11-126 for the duration of the emergency.

**156 Robert Jones Road     Dawsonville, Georgia 30534**
**678 362 7650                                                       jrm@johnmonroelaw.com**

March 27, 2020
Chief Justice Melton, p. 2

There are several factors supporting the suspension.  First, it would hardly be novel in our federal system.  The large majority of states do not prohibit carrying a handgun openly without a license.  In fact, a large minority of states do not even prohibit carrying a handgun concealed without a license.  The system "works" in those states without any apparent issues.

Second, the crime of carrying a weapon without a license is only *malum prohibitum*.  There is no inherent evil in going armed.

Third, if a person commits a crime with a firearm, such as robbery or murder, he still would be fully criminally liable for those actions.

The risk to public safety is therefore low in suspending enforcement, and the risk of not suspending enforcement is ongoing violation of Georgians' constitutional rights on a widespread basis.

I already have asked Gov. Kemp to use his emergency powers to suspend enforcement of O.C.G.A. § 16-11-126 for the duration of the emergency (a copy of the letter to Gov. Kemp is enclosed/attached for your convenience).  I have discussed the issue with the Governor's office, but to date he has not acted on the request.  I am hopeful that if you join me in encouraging Gov. Kemp to act, we can address this problem and abate it quickly.

Thank you for your attention.  I would be happy to discuss this matter with you further.

Sincerely,


John R. Monroe

# JOHN R. MONROE
# JOHN MONROE LAW, P.C.

**March 19, 2020**

The Hon. Brian Kemp
Governor

**RE:     Request of GeorgiaCarry.Org, Inc. to Suspend Enforcement of O.C.G.A. § 16-11-126 During COVID-19 Emergency**

Dear Gov. Kemp:

I am writing you behalf of GeorgiaCarry.Org, Inc.  As you know, Chief Justice Melton has declared a Statewide Judicial Emergency and has ordered judges not to perform "non-essential" functions.  The Council of Probate Judges has determined that issuing Georgia weapons carry licenses ("GWLs") is "non-essential."  For the duration of the Judicial Emergency, the State is not issuing GWLs or even accepting applications for them.

O.C.G.A. § 16-11-126 prohibits carrying a weapon outside one's home, automobile, or place of business without a GWL.  Violations are punishable as for a misdemeanor ($1,000 fine and 12 months in jail).

The only way our licensing requirement "works" constitutionally is with the relative ease for law-abiding citizens to  obtain a GWL.  We have moved from the status quo ante of relative ease to the current state of sheer impossibility of obtaining a GWL.

In order to preserve the Second Amendment and State Constitutional rights of law-abiding citizens during the emergency, I therefore request that you use your emergency powers to suspend enforcement of O.C.G.A. § 16-11-126 for the duration of the emergency.  This request is not a drastic one.  Dangerous people such as convicted felons and mentally ill will remain prohibited under state and federal law (O.C.G.A. § 16-11-131; 18 U.S.C. § 922(g)) from even possessing firearms, let alone carrying them.  The request would only allow people who already are permitted to possess firearms to carry them outside their homes, automobiles, and places of business in order to protect themselves and their families during this time of crisis.

Thank you in advance for your consideration and your leadership during this emergency, and please contact me if you have any questions.

Sincerely,

John R. Monroe
Vice President, GeorgiaCarry.Org, Inc.

**156 Robert Jones Road     Dawsonville, Georgia 30534**
**678 362 7650**                                          jrm@johnmonroelaw.com



# Supreme Court
# State of Georgia

NATHAN DEAL JUDICIAL CENTER

## Atlanta 30334

April 9, 2020

Mr. John R. Monroe
John Monroe Law, PC
156 Robert Jones Road
Dawsonville, Georgia 30534

Dear Mr. Monroe,

Thank you for your letter of March 27, 2020 regarding implications of the declared judicial emergency as it relates to carrying a weapon outside one's home, automobile, or place of business without a license.

In response, please let me begin by pointing out that the authority that I have to declare a judicial emergency and the scope of what that declaration can provide is set forth in OCGA § 38-3-60 et seq. which deals almost exclusively with extending deadlines and other time schedules "imposed by otherwise applicable statutes, rules, regulations, or court orders." This is consistent with what you indicated that the probate court has reported to you. However, the ability to administratively suspend substantive legal requirements altogether, such as the license requirement to carry a weapon, is vested, if at all, with the Governor. You seem to already appreciate this assignment of authority as evidenced by your separate letter to him regarding this matter.

I am mindful of the practical difficulties imposed by this present state of affairs and thank you for your concerns. Above all, I hope for you, your family and friends to remain safe and healthy during this difficult time.

Sincerely,

Harold D. Melton