IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SARA CARTER and
GEORGIACARRY.ORG, INC.,          )
                                 )
        Plaintiffs,              )          CIVIL ACTION FILE NO.:
                                 )
vs.                              )          1:20-cv-1517-SCJ
                                 )
BRIAN KEMP and PINKIE TOOMER,    )
                                 )
        Defendants.              )

**DEFENDANT GOVERNOR KEMP'S RESPONSE TO PLAINTIFFS'
MOTION FOR TEMPORARY RESTRAINING ORDER**

COMES NOW Defendant Brian Kemp, Governor of the State of Georgia, and submits this Response to Plaintiffs' Motion for Temporary Restraining Order (Doc. 3), showing the Court as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Sara Carter and GeorgiaCarry.Org, Inc. filed the underlying 42 U.S.C. § 1983 lawsuit against Governor Kemp and Judge Pinkie Toomer, alleging that they violated the Second and Fourteenth Amendments and state law by restricting Plaintiff Carter's ability to obtain a Georgia weapons carry license ("GWL"), or alternatively, to carry weapons without a GWL, during the current

health crisis and state of emergency.[1]  (Doc. 1).  With regard to Governor Kemp specifically, Plaintiffs allege that he is the chief executive officer for the State of Georgia and obligated to ensure that laws are faithfully executed.  (*Id.*, p. 2). Plaintiffs further allege that Governor Kemp declared a public health state of emergency on March 14, 2020 due to the rapid spread of COVID-19, which prompted the Supreme Court of Georgia to issue a judicial emergency declaration that paused all non-essential judicial functions and proceedings during the state of emergency.  (*See* Docs. 1, 3, 12; *see also* Doc. 9, pp. 3-7).  The public health state of emergency and judicial emergency declarations are based on the continued transmission of COVID-19 throughout the State of Georgia in an effort to protect the health, safety, and welfare of all Georgia citizens and visitors. (*See* Doc. 9, pp. 3-10).  Plaintiffs allege that in response to the judicial emergency declaration, the probate court of Fulton County, Georgia, temporarily suspended the acceptance of GWL applications.[2]  (Doc. 1, p. 4).

Plaintiffs allege that in order to carry a weapon outside of one's home, automobile, or place of business, individuals must have a GWL.  Plaintiff Carter alleges that she does not have a GWL, but believes she would qualify for one if the

---

[1] The undersigned only represent Governor Kemp in this action.

[2] The temporary suspension of accepting GWL applications does not impact renewals of GWLs—renewal deadlines were instead tolled by the judicial emergency declaration.  (*See* Doc. 9, p. 12).

probate court were accepting applications.  (*Id.*, p. 5).  Plaintiffs allege that without a GWL, Plaintiff Carter could be charged with a misdemeanor pursuant to O.C.G.A. § 16-11-126.  (Doc. 1, p. 4).  Plaintiffs allege that the state "routinely enforces" O.C.G.A. § 16-11-126, and that they sent a letter to Governor Kemp asking him to suspend enforcement of O.C.G.A. § 16-11-126, but he has failed to do so.  (*Id.*, p. 5).  Because the Fulton County probate court is not currently accepting applications for GWLs and O.C.G.A. § 16-11-126 prohibits individuals from carrying weapons without a GWL, Plaintiffs contend that they are effectively prevented from bearing arms in violation of the Second and Fourteenth Amendments, as well as state law.  (*Id.*, pp. 5-7).  In relief, Plaintiffs seek (1) a declaration against Governor Kemp that the enforcement of O.C.G.A. § 16-11-126 is unconstitutional as applied because it violates the right to due process and to bear arms if it is not reasonably possible to obtain a GWL, and (2) an injunction against Governor Kemp prohibiting the enforcement of O.C.G.A. § 16-11-126.[3] (Doc. 1, pp. 7-8).

Plaintiffs also filed a Motion for Temporary Restraining Order ("TRO"), seeking an order enjoining the enforcement of O.C.G.A. § 16-11-126 "during the pendency of this case, or at least until the current state of emergency has abated."

---

[3] Plaintiffs also seek attorney's fees against both Defendants, as well as mandamus relief pursuant to state law and declaratory relief against Judge Toomer.  (Doc. 1, pp. 7-8).

(Doc. 3, p. 1). Plaintiffs argue that the suspension of GWL applications coupled with the *potential* enforcement of O.C.G.A. § 16-11-126 against Plaintiff Carter, should she exercise her right to carry a weapon in self-defense without a GWL, violates the Second Amendment. (*Id.*, pp. 2-4; *see also* Doc. 12). For the reasons below, Plaintiffs' Motion for a TRO against Governor Kemp should be denied.

## II.  ARGUMENT AND CITATION TO AUTHORITY

The chief function of a TRO or preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated. *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). A TRO or preliminary injunction is only appropriate where the movant demonstrates that: (a) there is a substantial likelihood of success on the merits; (b) the preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that a preliminary injunction would cause to the non-movant; and (d) the preliminary injunction would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001). The burden of persuasion as to all four requirements is on the moving party. *United States v. Jefferson County*, 720 F. 2d 1511 (11th Cir. 1983).

The standard for granting such relief is high. It "is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 573

4

(11th Cir. 1974).   Quoting Supreme Court precedent, the Former Fifth Circuit

noted that:

> [t]here is no power the exercise of which is more
> delicate, which requires greater caution, deliberation, and
> sound discretion, or more dangerous in a doubtful case,
> that the issuing of an injunction.   It is the strong arm of
> equity, that never ought to be extended, unless to cases of
> great injury, where courts of law cannot afforded an
> adequate and commensurate remedy in damages.   The
> right must be clear, the injury impending and threatened,
> so as to be averted only by the protecting preventive
> process of injunction.

*Congress of Racial Equality v. Douglas*, 318 F.2d 95, 98 n.2 (5th Cir. 1963)

(quoting *Truly v. Wander*, 5 How. 141, 12 L.Ed. 88 (1847).   The Eleventh Circuit

has instructed that courts should be even more tentative in issuing injunctions

when the party to be enjoined is a state governmental entity:

> [e]quitable remedies are powerful, and with power comes
> responsibility for its careful exercise.   These remedies
> can affect nonparties to the litigation in which they are
> sought; and when, as in this case, they are sought to be
> applied to officials of one sovereign by the courts of
> another, they can impair comity, the mutual respect of
> sovereigns—a legitimate interest even of such
> constrained sovereigns as the states and the federal
> government . . . [T]here is not an absolute right to an
> injunction in a case in which it would impair or affront
> the sovereign powers or dignity of a state . . . .

*McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 487-88 (11th Cir. 1996).

Applying these standards, Plaintiffs' Motion for TRO should be denied.

**A. Plaintiffs Cannot Establish a Substantial Likelihood of Prevailing on the Merits of Their Claims.**

Plaintiffs have little to no likelihood of success on the merits of their claims against Governor Kemp.  First, Plaintiffs lack standing to bring this action against Governor Kemp because they have suffered no concrete injury which arises from any action taken by Governor Kemp.  Second, Plaintiffs' claims against Governor Kemp are barred by the Eleventh Amendment and do not fit within the *Ex Parte Young* exception to the immunity bar.  Third, Governor Kemp can neither require nor prevent any member of the state judiciary from performance of their duties.  Fourth, Plaintiffs' claims for equitable relief, against Governor Kemp in an individual capacity, fail to state a claim.   Fifth, Plaintiffs cannot establish a violation of either the Second Amendment or the Fourteenth Amendment.

**1.  Plaintiffs Lack Standing To Challenge O.C.G.A. § 16-11-126.**

Plaintiffs bear the burden of establishing standing.  *Susan B. Anthony List v. Driehaus*, 1573 U.S. 149, 58 (2014).  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

> It is by now well settled that "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'--an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*United States v. Hays*, 515 U.S. 737, 742-743 (1995) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). A "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

Here, Plaintiffs cannot demonstrate standing for two reasons. First, Plaintiffs cannot show that they will suffer an injury in fact. Second, Plaintiffs cannot show a causal connection between a concrete injury and Governor Kemp's conduct.

The Lack of a Concrete Injury

The Supreme Court has "repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." *Hays*, 515 U.S. at 743. An injury in fact must be concrete. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (quoting Black's Law Dictionary 479 (9th ed. 2009)). The Supreme Court has explained:

When we have used the adjective "concrete," we have meant to convey the usual meaning of the term — "real," and not "abstract."

> Webster's Third New International Dictionary 472 (1971); Random
> House Dictionary of the English Language 305 (1967).
> Concreteness, therefore, is quite different from particularization.

*Spokeo*, 136 S. Ct. at 1548.

Here, as in *Spokeo*, Plaintiffs have failed to articulate any concrete injury. Instead, Plaintiff Carter's "fear of arrest and prosecution if she carries a handgun outside her home, motor vehicle, or place of business without a GWL" (Doc. 1 ¶ 35) is speculative and not reasonable in light of state law *prohibiting* law enforcement officers from detaining Plaintiff to inquire about her permit. *See* O.C.G.A. § 16-11-137(b). Defendant recognizes that an "actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging [the] law." *Driehaus*, 573 U.S. at 158-159. However, there must be "a credible threat of prosecution" under the challenged statute. *Id.* at 159 (quoting *Babbitt* v. *Farm Workers,* 442 U. S. 289, 298 (1979)). Here, there is no threat of prosecution because law enforcement officers are prohibited by statute from detaining anyone for the purpose of establishing whether they have a license. In other words, unless law enforcement has probable cause to detain Plaintiff for the violation of some other criminal statute, there is no possibility of arrest and prosecution. In fact, during the past two years, the Department of Public Safety (DPS) has only issued fourteen (14) citations, to twelve (12) individuals, for violation of O.C.G.A. § 16-11-126(h). In each and every case, the underlying cause of the traffic stop

8

was another criminal violation, and in each and every case, the individual cited was not eligible for a GWL because they were prohibited by law from carrying a weapon.  *See* Declaration of Joan Crumpler, attached hereto as State Defendant's Exhibit 1.

Under these circumstances, a generalized fear that Plaintiff will be prosecuted for carrying a gun without a license, and prior to the expiration of the state of emergency, is not sufficiently concrete to confer standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting "reasonable likelihood" of injury as sufficient to meet the injury in fact standard).  Here the Complaint seeks to address purely speculative injuries.

There is No Causal Connection

Even if Plaintiffs' fear of prosecution were more than speculative, the injuries are not "fairly . . . traceable" to Governor Kemp's conduct "as opposed to the action of . . . a third party."  *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1296 (11th Cir. 2019) (*en banc*); *see also Clapper*, 568 U.S. at 411 (holding that speculation about whether Plaintiffs would be subjected to surveillance under the challenged federal statute, "or some other authority—shows that [Plaintiffs] cannot satisfy the requirement that any injury in fact must be fairly traceable to" the challenged statute).  Plaintiffs do not contend that the statutory framework is unconstitutional, either as a facial or as applied matter.  Rather, they contend that

contrary to the express language in O.C.G.A. § 16-11-129, another government actor has suspended accepting GWL applications due to a judicial state of emergency.  The relief Plaintiffs seek however, is to enjoin the enforcement of O.C.G.A. § 16-11-126.  Any potential injury to Plaintiffs must be traced not to the general, and lawful, license requirement and the statutory framework for obtaining a license, but to the suspension of processing GWL applications during a state of emergency.[4]  Plaintiffs seek an Order enjoining the Governor from enforcement of O.C.G.A. § 16-11-126, "[b]ut what, exactly, do they say the [Governor] did wrong – how, exactly, do they trace their injuries to his 'conduct.'"  *Lewis*, 944 F.3d at 1296.  Without a connection between Plaintiffs' alleged injuries and the Governor's conduct, Plaintiffs lack standing to bring claims against the Governor. *See also Allen v. Wright*, 468 U.S. 737, 752-753 (1984) (holding that parents of school children did not have standing to challenge federal tax exemptions to racially discriminatory private schools because the alleged injury was not "fairly traceable to the assertedly unlawful conduct of the IRS.").

Because Plaintiffs lack standing to challenge the general weapons license requirements in O.C.G.A. § 16-11-126, and the statutory framework for obtaining a license, the claims against Governor Kemp do not support a TRO.

---

[4] Nothing in the Governor's Executive Order expressly addresses the issuance of Georgia weapons permits.

### 2.  Plaintiffs' Claims Against Governor Kemp Are Barred by the Eleventh Amendment.

The Eleventh Amendment bars suit against a State's agencies, departments, or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest or when any monetary recovery would be paid from State funds.  *Kentucky v. Graham*, 473 U.S. 159, 1653 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984).  Because claims against public officials in their official capacities are merely another way of pleading an action against the entity of which the officer is an agent, "official capacity" claims against a state officer are included in the Eleventh Amendment's bar.[5]  *Kentucky*, 473 U.S. at 165.

---

[5] Plaintiffs' Complaint only seeks injunctive relief against Governor Kemp in his individual capacity.  (*See* Doc. 1 ¶¶ 51-52).  Claims for injunctive relief may be brought against government officials only in their official capacity.  *Wu v. Thomas*, 863 F.2d 1543, 1550 (11th Cir. 1989); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 n. 9 (11th Cir. 1995) (explaining that "claims for injunctive or declaratory relief . . . are considered to be official capacity claims against the relevant governmental entity"); *see also Santhuff v. Seitz*, 385 Fed. Appx. 939, 642 n. 3 (11th Cir. 2010) (affirming dismissal of claims for injunctive relief where Defendant was only sued in his individual capacity); *Common Cause v. Kemp*, 243 F. Supp. 3d 1315, 1318 (N.D. Ga. 2017), *vacated and remanded on other grounds*, 714 Fed. Appx. 990 (11th Cir. 2018); *Calhoun v. Lockette*, 2018 U.S. Dist. LEXIS 37509, * 6 (M.D. Ga. 2018) (failure to state a claim for injunctive relief against state official when sued in her individual capacity).  Therefore, the individual capacity claims against Governor Kemp cannot support a TRO and should be dismissed for failure to state a claim.

The State Law Claims Are Barred

"A State's constitutional interest in immunity encompasses not merely whether it may be sued, but *where* it may be sued." *Pennhurst*, 465 U.S. at 99 (emphasis added). "Thus, a State does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts." *Welch v. Texas Dep't of Highways & Public Transp.*, 483 U.S. 468, 473-474 (1987). While an exception to the Eleventh Amendment bar exists for suits against state officers in their official capacities seeking prospective equitable relief to end violations of federal law, the exception does not extend to actions for prospective equitable relief to end violations of state law. *Pennhurst*, 465 U.S. at 106; *Doe v. Bush*, 261 F.3d 1037, 1055 (11th Cir. 2001) (explaining that "federal courts do not have the authority to compel state actors to comply with state law.") "It is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106. "For that reason, a federal court may not entertain a cause of action against a state for alleged violations of state law, even if that state claim is pendent to a federal claim which the district court could adjudicate." *DeKalb County Sch. Dist. v. Schrenko*, 109 F.3d 680, 688 (11th Cir. 1997). In other words, 28 U.S.C. § 1367 does not abrogate the Eleventh

Amendment. *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533 (2002). Therefore, Plaintiffs' claims, premised on the Georgia Constitution and state law, cannot support a TRO.

The *Ex Parte Young* Exception

As noted above, an exception to Eleventh Amendment immunity exists under *Ex parte Young*, 209 U.S. 123 (1908), for suits against state officers for prospective injunctive relief. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24 (1997). However, "[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999), *cert. denied*, 529 U.S. 1012 (2000) (quoting *Ex parte Young*, 209 U.S. at 157 and declining to apply the exception where Defendants had no authority to enforce the challenged statutory provision). Like *Summit*, here, there is no connection between the Governor and the decision of a member of the judicial branch to suspend processing weapons licenses. As noted above, Plaintiffs do not challenge the State's general licensure requirements. They do not claim that either O.C.G.A. § 16-11-126 or O.C.G.A. § 16-11-129 is unconstitutional. Rather, they challenge only the statute's enforcement in the context of another government

official's action to suspend issuing licenses.  However, as noted below, Governor Kemp has no authority to compel a member of the judicial branch in the performance of his or her duties.  *See* Sec. II.A.3 below.

### 3. Plaintiffs Cannot State a Claim Against Governor Kemp Because He Has No Control Over the Judiciary.

Plaintiffs fail to state a claim against Governor Kemp as a matter of law. Plaintiffs make no specific allegations setting forth how Governor Kemp has violated any constitutional right, and their broad allegations that he is responsible for upholding laws are too generalized and vague to establish liability.  It is clear that Plaintiffs' claims are premised on the Supreme Court of Georgia's judicial emergency declaration and subsequent determination of the judiciary that processing GWL applications is not an essential judicial function during the COVID-19 global health crisis.  However, Governor Kemp does not exercise control over the judiciary or otherwise direct the judiciary's decision-making or court operations.  To do so would violate the separation of powers mandated by Georgia's Constitution:

> The legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided.

Ga. Const. Art. I, Section II, Para. III.  This doctrine of separation of powers "invests those officials charged with the duty of administering justice according to

law with all necessary authority to efficiently and completely discharge those duties the performance of which is by the constitution committed to the judiciary, and to maintain the dignity and independence of the courts." *Lovett v. Sandersville R.R.*, 199 Ga. 238, 239-240 (1945); *see also Cormier v. Horkan*, 2010 U.S. Dist. LEXIS 12146, at \*22-23 (M.D. Ga. 2010) (rejecting claim that Governor had supervisory authority over judiciary as a matter of law) (vacated and remanded on other grounds).

Without question, Governor Kemp was well within his authority to declare a public health state of emergency. *See* O.C.G.A. § 38-3-2(a)(2), § 38-3-3(6), (7), § 38-3-51. Plaintiffs do not allege otherwise. Significantly, it was also within the judiciary's authority to declare a judicial state of emergency and for courts throughout the State to make determinations regarding how to proceed under the state of emergency—including which functions are essential—in order to protect the health, safety, and welfare of court employees and the public. *See* O.C.G.A. § 38-3-60, § 38-3-61(a); *see also Wallace v. Wallace*, 225 Ga. 102, 111, 166 S.E.2d 718, 724 (1969) (discussing the inherent powers of the judiciary, including "the authority to perform any function reasonably necessary to effectuate its jurisdiction, improve the administration of justice, and protect the judiciary as an independent department of the government"); O.C.G.A. § 15-1-3. Governor Kemp

does not, and cannot, control how the judiciary manages its courts and judicial functions during this unprecedented health crisis.

Plaintiffs alternatively request that the Court order Governor Kemp to suspend enforcement of O.C.G.A. § 16-11-126, which requires a valid GWL in order to carry a weapon in certain circumstances.[6]   Governor Kemp does not support enforcement of O.C.G.A. § 16-11-126 during a time when individuals are not able to pursue the permitting process; however, he does not have the authority to suspend O.C.G.A. § 16-11-126 under the public health emergency powers because that statute does not prevent, delay, or otherwise hinder necessary action related to the current public health crisis.  *See* O.C.G.A. § 38-3-51(d)(1) (providing the Governor with discretion to "[s]uspend any regulatory statute prescribing procedures for conduct of state business…if strict compliance with any statute…would in any way prevent, hinder, or delay necessary action in coping with the emergency…").   In any event, even if Governor Kemp did have that authority, exercising discretion to suspend a valid state law during the public health state of emergency would not give rise to a federal constitutional claim.  Plaintiffs cite no authority to support the notion that a Governor can be forced to suspend a valid state law on grounds that Plaintiffs disagree with the operational decisions of

---

[6] There are several exceptions outlined in the statute for when a person may possess a weapon even in the absence of a GWL.  *See* O.C.G.A. § 16-11-126.

a county probate court.   Plaintiffs do not claim that O.C.G.A. § 16-11-126 is unconstitutional.   They instead argue that it violates the Second Amendment 'as applied' because the probate court will not let them apply for a GWL during the state of emergency.   Regardless of how framed, it is clear that Plaintiffs' complaint is with the probate court's decision to temporarily suspend GWL applications, not any requirement found in O.C.G.A. § 16-11-126.   Plaintiffs cannot sustain a constitutional claim against Governor Kemp on this basis.

### 4.  Plaintiffs Have Failed to Allege a Due Process Violation.

The Fourteenth Amendment's due process clause provides two types of protection:  (1) substantive due process; and (2) procedural due process.  *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc).  The substantive component of the clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937).  Procedural due process is a guarantee of fair procedures whereby the state may not deprive a person of life, liberty or property without providing "appropriate procedural safeguards." *Daniels v. Williams*, 474 U.S. 327 (1986).  "The fundamental requirement of [procedural] due process is the opportunity to be heard." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981).  Plaintiffs do not expressly address whether their claims are for substantive or procedural due

process protections.  Regardless, they fail to state a claim for violation of either due process protection.

Substantive Due Process

A finding that a right merits substantive due process protection means that the right is protected "against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).  The Supreme Court has recognized only a limited number of substantive due process rights. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the rights to marry; to have children; to direct the education and upbringing of one's children; to marital privacy; to use contraception; to bodily integrity; and to abortion.") (internal citations omitted).

Where rights are protected by "a particular amendment [that] 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  In other words, Plaintiffs cannot claim any broader protection of the right to bear arms via the Fourteenth Amendment than that afforded via the Second

Amendment. It is only if the claim alleged is not covered by a particular Amendment that the Court should address whether there is nonetheless a claim for substantive due process. *County of Sacramento*, 523 U.S. at 843 (citing *U.S. v. Lanier*, 520 U.S. 259, 272 n. 7 (1997)).

Finally, in Plaintiffs' third brief supporting their TRO, Plaintiffs cite three cases where statutory schemes were found to violate Due Process because the schemes themselves prohibited compliance with some licensure requirement. (Doc. 18).  None of the three cases Plaintiffs cite are applicable here.

In *Doe v. Snyder*, 101 F. Supp.3d 722  (E.D. Mich. 2015), a district court struck down a state statutory requirement that provided that an individual required to be registered under a sex offender registry had to maintain a valid driver's license or an official state identification card with their current address.  *Id.* at 724-725.  The statute was unconstitutional because another statutory provision required that to obtain an identification card an individual needed two documents with their current address, and a homeless individual could not comply with that statutory framework.  *Id.*

In *Derby Club, Inc. v. Becket*, 252 P.2d 259, 265 (1953), the state court invalidated a license requirement in a state statute as void because the statute's *language* was "vague, uncertain, indefinite, and unintelligible and contain[ed] no

19

standards for determining under what circumstances the liquor control board may grant or deny an applicant a bottle club license."

Finally, in *Keith v. Sioux Nation Shopping Center*, 634 F.2d 401 (8th Cir. 1980), there was no statute or conduct held unconstitutional. Rather, a civil complaint was filed against a number of individuals for "trading with Indians on a reservation without a federal trading license," as required by federal statute. *Id.* at 402. However, no licensing program existed on the subject Indian Reservation. *Id.* at 403. Moreover, a tribal tax served largely the same function as the license. Under these circumstances the Eighth Circuit upheld the district court's dismissal of the civil complaint. Here, a statutory scheme for issuing a GWL exists, despite the current delay in processing applications.

In each of these cases, compliance with the statutory requirement was not possible because of the established structure. Here, the inability of Plaintiff to have her application for a license processed is only temporary. Moreover, the statutory structure not only allows the issuance of licenses but requires issuance where the applicant is qualified. Plaintiffs' allegations do not state a Due Process violation against Governor Kemp.

<u>Procedural Due Process</u>

"A §1983 action alleging a procedural due process clause violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or

20

property interest; state action; and constitutionally inadequate process." *Doe v. Fla. Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)).  The Eleventh Circuit has repeatedly explained that procedural due process violations are not complete unless and until the state refuses to provide due process. *McKinney*, 20 F.3d at 1562; *Watts v. Florida Int'l Univ.,* 495 F.3d 1289, 1294 (11th Cir. 2007).

The state can cure a procedural deprivation by providing a later procedural remedy. *McKinney*, 20 F.3d at 1557.  Only when the state refuses to provide a process sufficient to remedy the deprivation does a constitutional violation become actionable under § 1983. *Id.  See also Wells v. Columbus Tech. College*, 510 Fed. Appx. 893, 897 (11th Cir. 2013) (explaining that "[p]rocedural due process violations do not even exist unless no adequate state remedies are available.") (quoting *Cotton v. Jackson*, 216 F.3d 1328, 1331 n.2 (11th Cir. 2000)).

Under Georgia law, "whenever, from any cause, a defect of legal justice would ensue from a failure to perform or from improper performance, the writ of mandamus may issue to compel a due performance . . . ." O.C.G.A. § 9-6-20. "Mandamus is ordinarily considered as a remedy for official inaction." *Coastal Service, Inc., v. Jackson*, 223 Ga. 238, 239 (1967).

To the extent that Plaintiff contends that Defendants must issue a GWL, they have an adequate state remedy:  a petition for a writ of mandamus in state

court.  The availability of the state remedy means that the procedural due process claim asserted does not exist. *See Horton v. Bd. of County Comm'rs*, 202 F.3d 1297, 1300 (11th Cir. 2000) ("If state court could [provide an adequate remedy], then there is no federal due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so").  Importantly, the Eleventh Circuit has held that a state remedy is *not* inadequate merely because a claim may be barred by state immunity laws. *Rittenhouse v. DeKalb County*, 764 F.2d 1451, 1459 (11th Cir. 1985); *Taylor v. Ledbetter*, 791 F.2d 881, 884 (11th Cir. 1986).  Accordingly, Plaintiffs cannot prevail on a procedural due process claim.

### 5.  Plaintiff Has Failed to Allege a Second Amendment Violation.

Plaintiffs do not have a substantial likelihood of succeeding on the merits of their Second Amendment claim as there is no established Second Amendment right to bear arms in public.  In analyzing Second Amendment claims, this Circuit has adhered to a two-step process: 1) whether the restricted activity is protected by the Second Amendment in the first place, and then 2) whether the restricted activity passes muster under the appropriate level of scrutiny to apply. *GeorgiaCarry.Org., Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1322 (11th Cir. 2015); *GeorgiaCarry.Org v. United States Army Corps of Eng'rs*, 38 F. Supp. 3d 1365, 1377 (N.D. Ga. 2014).

Plaintiffs allege that the probate court's decision to not process GWL applications during the state of emergency prevents Plaintiff Carter from being able to carry a handgun in public and thus violates her Second Amendment rights. Given the scope of Georgia's law affording Plaintiff Carter the right to possess arms and the lack of legal authority to establish a Second Amendment right, Plaintiffs' allegations must fail.

Georgia law allows persons to possess a weapon or a long gun inside their homes, cars, and place of business without a license; a long gun without a license as long as it is carried openly and fully exposed; and a handgun without a license as long as it is in a case and unloaded.  O.C.G.A. § 16-11-126(a) – (c).  For all other situations, the individual must possess a GWL.  O.C.G.A. § 16-11- 126(h). Thus, under state law, Plaintiff is afforded the ability to possess a long gun without a license if carried openly and fully exposed. Likewise, Plaintiff's right to carry a handgun outside of her home, car, or business without a license is only curtailed by state law to the extent that the handgun must be in a case and unloaded.  Plaintiff is free to carry her loaded firearm without license at her home, in her car, and at her place of business.  And she cannot establish a Second Amendment right to go beyond these narrow restrictions.

The United States Supreme Court has found a clear Second Amendment right to bear arms for purposes of self-defense, particularly in the home.  *District of*

*Columbia v. Heller*, 554 U.S. 570, 628, 630; *see also McDonald*, 130 S.Ct. 3020, 3036, 3044 (2010). The *Heller* Court, however, explained that Second Amendment rights are "not unlimited" and discussed a non-exhaustive list of "presumptively lawful regulatory measures." *Id.* at 626-627, 627 n. 26.   *Heller* did not expressly extend the Second Amendment as providing a clear right to bear arms in public. Nor did *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016), as Plaintiffs contend. *Caetano* discussed which instrumentalities were protected under the Second Amendment; it did not discuss the issue related to the right to bear arms in public. *Id.* Defendant is not aware of any cases that cite to *Caetano* for the premise advanced by Plaintiffs.

The Eleventh Circuit has also not yet taken a clear stance on whether the right to bear arms in public is protected by the Second Amendment.   *See, e.g., GeorgiaCarry.Org*, 788 F.3d at 1325.   The majority of circuits, however, have concluded that, pursuant to *Heller*, regulations related to weapon possession in public may either be in the "presumptively lawful" category or perhaps within the scope of the Second Amendment, but in either situation, the restrictions on the right to bear arms in public should be reviewed using intermediate scrutiny.[7]

---

[7] *Gould v. Morgan*, 907 F.3d 659, 672 (1st Cir. 2018) ("Public carriage of firearms for self-defense falls outside the perimeter of this core right…. we decide today that intermediate scrutiny supplies the appropriate test"); *Kachalsky v. Cty. of*

Here, assuming only for purposes of this Motion that the temporary restriction on weapons licenses is within the scope of the Second Amendment protections, intermediate scrutiny, as most jurisdictions have concluded, is the appropriate standard to apply because O.C.G.A. § 16-11-126 does not restrict one's ability to possess a handgun in one's home, vehicle, or place of business. *See supra; see also, Hertz v. Bennett*, 294 Ga. 62, 66 (2013) (finding that because O.C.G.A. § 16-11-126 allows for possession of a handgun in home, car, or place of business, O.C.G.A. § 16-11-129, which does not "involve the core Second

---

*Westchester*, 701 F.3d 81, 96 (2d Cir. 2012) ("We believe state regulation of the use of firearms in public was "enshrined with[in] the scope" of the Second Amendment when it was adopted…. we conclude that intermediate scrutiny is appropriate in this case"); *Drake v. Filko*, 724 F.3d 426, 434-435 (3d Cir. 2013) ("we believe that the "justifiable need" standard of the Handgun Permit Law qualifies as a "longstanding," "presumptively lawful" regulation that regulates conduct falling outside the scope of the Second Amendment's guarantee. …Even assuming that the "justifiable need" standard is not a longstanding regulation enjoying presumptive constitutionality…it withstands the appropriate, intermediate level of scrutiny"); *Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013) ("we merely assume that the *Heller* right exists outside the home …the requirement passes constitutional muster under what we have deemed to be the applicable standard — intermediate scrutiny"); *NRA of Am., Inc. v. McCraw*, 719 F.3d 338, 342 (5th Cir. 2013) (The regulation had "only a temporary effect, restricted only the ability to carry handguns in public (not from using guns in defense of hearth and home), and it banned such use only outside a home or vehicle…. the scheme survived intermediate scrutiny"); *Bonidy v. United States Postal Serv.,* 790 F.3d 1121, 1126 (10th Cir. 2015) ("If Second Amendment rights apply outside the home, we believe they would be measured by the traditional test of intermediate scrutiny"). *Compare Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) (held that the Second Amendment guarantees a citizen the right to carry a firearm in public and applied what appeared to be more of a strict scrutiny analysis).

Amendment right to possess a firearm for self-defense in one's home," should be evaluated using intermediate scrutiny).

In the Second Amendment context, under  intermediate scrutiny, the government must assert "a significant, substantial, or important interest; there must also be a reasonable fit between that asserted interest and the challenged law, such that the law does not burden more conduct than is reasonably necessary." *GeorgiaCarry.Org*, 38 F. Supp. 3d at 1377.  Here, the application of O.C.G.A. § 16-11-126 in this context satisfies intermediate scrutiny.

The temporary restriction on the ability to obtain a GWL is based on an important governmental interest of keeping people safe during the COVID-19 global pandemic. The State of Georgia is under a state of emergency.  As much as is practical, Georgia residents are required to stay in their homes, avoid going to their place of business, and avoid having physical contact or even being within close contact with other persons, to slow the spread of the virus.  The application process often requires people to physically be at their place of business, which puts these employees, as well as the applicant, at risk of being in close contact with people who may be carrying the virus.  Furthermore, the act of taking fingerprints required for the license application often requires one person to be in close physical contact with other individuals and to even touch their hands.  The restriction on the license applications is only temporary, currently ending May 13,

2020.  The fit between the interest in keeping people safe from the virus and temporarily restricting license applications does not burden any more conduct than is reasonably necessary to accomplish this goal.  *See Hertz,* 294 Ga. at 66 (upholding Georgia's weapons carry license statute against an as-applied challenge, finding it to be a reasonable means of achieving the important government objective of promoting public safety and noting in particular that it does not burden the "core Second Amendment right to possess a firearm for self-defense in one's home").  As such, Plaintiffs have failed to prove that they have a substantial likelihood of succeeding on the merits of their Second Amendment claim.  *See GeorgiaCarry.Org*, 38 F. Supp. 3d at 1378 (denying the plaintiff's motion for a temporary restraining order, finding in part, after applying intermediate scrutiny, that the firearm regulation was reasonably suited to advance a substantial government interest").

Because Plaintiffs cannot establish the first factor required for a TRO, their Motion should be denied.

### B.    Plaintiffs Have Not Shown Any Non-speculative Irreparable Injury.

In addition, Plaintiffs cannot show that they will suffer an irreparable injury in the absence of the relief requested.  "[A] showing of irreparable injury is the *sine qua non* of injunctive relief."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th

Cir. 2000).  It cannot be presumed, even where there is a violation of constitutional rights.  *Id*. at 1177-78.  A movant for a preliminary injunction must present facts that show a "real and immediate" threat of substantial, irreparable harm before a federal court will intervene.  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (explaining that "[t]he injury or threat of injury must be both real and immediate, not conjectural or hypothetical"); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994).

Plaintiffs do not face any threat of irreparable harm.  Because Plaintiff failed to demonstrate a likelihood of constitutional harm in the first place, she also fails to demonstrate that irreparable harm will flow from the denial of a temporary restraining order.  *See, e.g., GeorgiaCarry.Org*, 38 F. Supp. 3d at 1379 (finding that plaintiffs failed to demonstrate that irreparable harm will flow from denying the motion).  Furthermore, as Plaintiffs concede, "Georgia law [ ] prohibits law enforcement officers from detaining a person for the purpose of seeing if he or she has a GWL."  Doc. 12 at 8; *see also* O.C.G.A. § 16-11-137(b).  In other words, Plaintiff Carter and other members of Georgiacarry.org, Inc., will not suffer irreparable harm since they do not possess a credible fear of prosecution.

Because Plaintiffs have failed to demonstrate any immediate threat of irreparable injury, their Motion should be denied.

C.     **The Damages of the Proposed Injunction Outweigh Any Risk of Injury to Plaintiffs.**

Plaintiffs bear the burden of showing that the perceived injury outweighs the damages that the injunction might cause.  *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).  They cannot meet this burden.  State officials have a substantial interest in the health, safety, and welfare of its citizens. *See, e.g., Posadas de P.R. Assocs. v. Tourism Co.*, 478 U.S. 328, 341 (1986).  The State also has an interest in the regulation of firearm possession. *See, e.g., GeorgiaCarry.Org, Inc. v. Georgia*, 764 F. Supp. 2d 1306, 1309-10 (M.D. Ga. 2011) (citing *Heller*, 554 U.S. at 626-627).  To grant the relief requested by Plaintiffs would undermine the steps State officials have taken to ensure the safety of the public during a significant health crisis.  The temporary imposition on Plaintiffs' ability to obtain a new GWL in order to carry firearms in public—either until this matter is resolved or the state of emergency is lifted—does not outweigh the health and safety of Georgia citizens.   *See, e.g., GeorgiaCarry.Org*, 38 F. Supp. 3d at 1379 (finding insufficient harm in a Second Amendment case where any harm to the plaintiff was temporary).  Further, given that the law related to the Second Amendment is still relatively new and completely untested during States of Emergency, it is appropriate to preserve the status quo until the rights of the parties can be fully and fairly adjudicated.

**D.   The Requested Injunction Would Be Adverse to the Public Interest.**

The injunction requested by Plaintiffs would also be adverse to the public interest.  As set forth above, State officials have a strong interest in ensuring the health, safety, and welfare of the public.  The injunctive relief Plaintiffs request would be adverse to these interests as Plaintiffs ask the Court to interfere with the discretion of State officials in managing the safety of the public during a health crisis.  Plaintiffs seek this intrusive intervention despite the fact that they cannot establish a constitutional violation against Governor Kemp.   Under these circumstances, Plaintiffs' Motion should be denied.

### III. CONCLUSION

Because Plaintiffs cannot establish that they are entitled to injunctive relief against Governor Kemp, their Motion for Temporary Restraining Order against him should be denied.

Respectfully submitted this 14th day of April, 2020.

CHRISTOPHER M. CARR        112505
Attorney General

BETH BURTON                          027500
Deputy Attorney General

*/s/ Tina M. Piper*
TINA M. PIPER                         142469
Sr. Assistant Attorney General

/s/ Cristina M. Correia
CRISTINA M. CORREIA        188620
Sr. Assistant Attorney General

/s/ Meghan R. Davidson
MEGHAN R. DAVIDSON      445566
Assistant Attorney General

/s/ Rebecca J. Dobras
REBECCA J. DOBRAS       940524
Assistant Attorney General

40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Direct line: (404) 657-3983
Fax: (404) 463-8864
Email: tpiper@law.ga.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this filing conforms to the requirements of L.R. 5.1(C).  This filing is written in 14 point New Times Roman font.

I hereby certify that on this day, I electronically filed **DEFENDANT GOVERNOR BRIAN KEMP'S RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of the attorneys of record.

This 14th day of  April, 2020.

<u>/s/ Tina M. Piper</u>
TINA M. PIPER
Senior Assistant Attorney General